IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-01781-NRN

K.B.D.T.,

Plaintiff,

v.

MARTIN O'MALLEY, Commissioner of Social Security,[1]

Defendant.

## OPINION AND ORDER

**N. Reid Neureiter**
**United States Magistrate Judge**

The government determined that Plaintiff K.B.D.T.[2] was not disabled for purposes of the Social Security Act. AR[3] 18–29. Plaintiff has asked this Court to review that decision. The Court has jurisdiction under 42 U.S.C. § 405(g), and both parties have agreed to have this case decided by a United States Magistrate Judge under 28 U.S.C. § 636(c). Dkt. #10.

---

[1] Martin O'Malley became the Commissioner of Social Security ("Commissioner") on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley should be substituted for Kilolo Kijakazi as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Pursuant to D.C.COLO.LAPR 5.2, "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only."

[3] All references to "AR" refer to the sequentially numbered Administrative Record filed in this case. Dkt. ##9, and 9-1 through 9-8.

**Standard of Review**

In Social Security appeals, the Court reviews the decision of the administrative law judge ("ALJ") to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied. *See Pisciotta v. Astrue,* 500 F.3d 1074, 1075 (10th Cir. 2007). "Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Raymond v. Astrue*, 621 F.3d 1269, 1271–72 (10th Cir. 2009) (internal quotation marks omitted). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes a mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The Court "should, indeed must, exercise common sense" and "cannot insist on technical perfection." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012).

The Court cannot reweigh the evidence or its credibility. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). However, it must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue*, 515 F.3d, 1067, 1070 (10th Cir. 2007). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).

**Background**

At the second step of the Commissioner's five-step sequence for making determinations,[4] the ALJ found that Plaintiff had the severe impairment of paranoid schizophrenia. AR 21. The ALJ deemed all other impairments to be non-severe, including hypertension, headaches, back pain, and obesity. *Id.*

The ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in the regulations, specifically listing 12.03 (schizophrenia spectrum and other psychotic disorders). AR 21–22. The ALJ explained that none of the claimant's impairments met the Paragraph B criteria of Section 12.00. She concluded that Plaintiff only had moderate limitations in the four broad areas of functioning. As to understanding, remembering or applying information, the ALJ found that Plaintiff's "treatment records consistently show no positive mental status examination findings," and noted that Plaintiff "consistently described activities to include making music, doing vape reviews, and making YouTube videos." AR 22. In interacting with others, the ALJ observed that while Plaintiff did not get along with his mother, he interacted with at least one friend, along with his brother and cousin. *Id.* The ALJ next reasoned that Plaintiff

---

[4] The Social Security Administration uses a five-step sequential process for reviewing disability claims. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). The claimant has the burden of proof through step four; the Social Security Administration has the burden of proof at step five. *Lax*, 489 F.3d at 1084.

3

had a moderate limitation in concentrating, persisting or maintaining pace because "treatment records document compliant treatment and stable symptoms without mental status examination findings to support greater than moderate impairment in this area." *Id.* Finally, Plaintiff's ability to adapt and manage himself was moderately limited given his desire to live on his own, owning a cat, having no problems with personal care or medication, preparing his own meals, cleaning, managing money, shopping, driving, and having hobbies like listening to music. *Id.*

The ALJ also determined that Plaintiff had not met the Paragraph C criteria because the record does not document "(1) medical treatment, mental health therapy, psychosocial support, or highly structured setting(s) that is ongoing and diminishes symptoms and signs of the mental disorder and (2) marginal adjustment with minimal capacity to adapt to changes in the environment or to demands that are not already part of daily life." *Id.*

Because she concluded that Plaintiff did not have an impairment or combination of impairments that met the severity of the listed impairments, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to

> perform a full range of work at all exertional levels but he needs to avoid unprotected heights, moving mechanical parts, and climbing ladders, ropes, and scaffolds. He can understand, remember, and carry out simple instructions that can be learned in 30 days or less and he can sustain concentration, persistence, and pace for these simple instructions for two-hour intervals with normal breaks. He can have occasional, noncollaborative interactions with co-workers and supervisors after the training period, which would allow for increased interactions solely for training purposes over the brief training period of no more than 30 days. He can work in close proximity to, but not directly with the general public. He can adapt to simple workplace changes.

AR 23.

4

The ALJ found that Plaintiff has no past relevant work. AR 27. Considering Plaintiff's age, education, work experience, and RFC, and in light of the testimony of a vocational expert ("VE"), the ALJ determined that there were other jobs that exist in significant numbers in the national economy that Plaintiff could perform, such as small kitchen helper, housekeeping/cleaner, and semiconductor bonder. AR 28. Accordingly, Plaintiff was deemed not to have been under a disability from May 12, 2021, through January 18, 2023, the date of the decision. AR 28–29.

## Analysis

Plaintiff argues that the ALJ's unfavorable decision should be reversed and remanded on two grounds. First, Plaintiff claims that the ALJ erred when she improperly assessed the opinions of Dr. Erica Weis, a treating source, and failed to support her findings with substantial evidence. Second, Plaintiff contends that the RFC was not supported by substantial evidence because the ALJ failed to account for Plaintiff's symptoms related to his paranoid schizophrenia. The Court will address each in turn.

**I.   The ALJ's Assessment of Medical Source Opinions**

   **a.  Applicable Law**

In assessing a claimant's RFC, the ALJ must address medical source opinions. *See Vigil v. Colvin*, 805 F.3d 1199, 1201-02 (10th Cir. 2015). Effective March 27, 2017, the regulations changed the procedures and standards for evaluating evidence, including medical source opinions. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Under the old regulations, the opinions of treating sources were generally entitled to more weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Treating-source

5

opinions were given "controlling weight" when they are "well supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent" with other substantial evidence in the record. *Id.* §§ 404.1527(c)(2), 416.927(c)(2); *see also Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

The new regulations set forth in 20 C.F.R. §§ 404.1520c and 416.920c abrogate the treating physician rule for claims filed on or after March 27, 2017. The Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner will consider the persuasiveness of each medical source's opinions using five factors: (1) supportability; (2) consistency; (3) relationship with the claimant (which encompasses the length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship); (4) specialization; and (5) other factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

The most important factors in evaluating persuasiveness are supportability and consistency. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). "[S]upportability examines how closely connected a medical opinion is to the objective medical evidence." *Mileto v. Comm'r, SSA*, No. 21-1403, 2022 WL 17883809, at *3 (10th Cir. Dec. 23, 2022) (citing 20 C.F.R. § 404.1520c(c)(1)). Consistency, on the other hand, "is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *Id.* (citing 20 C.F.R. §§ 404.1520c(c)(2),

6

416.920c(c)(2)). The ALJ must explain her approach with respect to these first two factors when considering a medical opinion, but she is not required to expound on the remaining three unless she finds that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported and consistent with the record, but not identical. 20 C.F.R. §§ 404.1520c(b)(2)–(3), 416.920c(b)(2)–(3).

### b. The ALJ's Assessment of the Medical Opinions

In this case, Dr. Weis, who saw Plaintiff at the Aurora Mental Health Center every two or three months before and during the relevant period, authored a letter dated February 1, 2021 (AR 215), and completed a Mental Impairment Questionnaire (AR 356–58) and a Physical Medical Source Statement (AR 359–62) on June 10, 2024.

In the February 1, 2021 letter, Dr. Weis noted that Plaintiff was diagnosed with schizophrenia since a hospitalization in 2014, followed by two other psychiatric hospitalizations (the last in early 2015), and that Plaintiff had undergone court-ordered treatment for three years. AR 215. Dr. Weis felt that Plaintiff was unable to work because of executive functioning deficits, including difficulty with planning, sequencing, and motivation. *Id.* She also noted that Plaintiff had difficulty regulating his sleep cycle, seldom left his house, and struggled with social interactions. *Id.*

The ALJ discounted this opinion as not consistent with Dr. Weis's own treatment notes, which she says "show mostly controlled symptoms on Invega [injected monthly], notwithstanding some increased issues and symptoms seemingly attributed to ongoing relationship conflicts with the claimant's mother, as well as still generally unremarkable

7

mental status examinations." AR 24, 26. The ALJ summed up Plaintiff's treatment records as follows:

> So generally consistent with the more voluminous pre-protective filing date treatment records, these treatment notes with Dr. Weis still did not show any significant objective findings, nor did they document any significant schizophrenia-type symptoms. Rather, the most recent treatment records show the claimant as performing activities inconsistent with a finding of disability, in that he reported spending time with friends, making music, and teaching others how to make music, and he reported a mood that is "always great."

AR 25. The ALJ further noted that (a) Plaintiff appears capable of living on his own and managing his treatment, (b) it was not clear that he suffers from motivational issues as a result of his schizophrenia, given his activities of daily living, and (c) if he does have poor motivation, it might be ascribed to his marijuana use. AR 26. Moreover, Dr. Weis's own treatment notes acknowledge that Plaintiff's sleep irregularities are likely not sufficient to establish disability, and Dr. Weis discussed vocational rehabilitation with Plaintiff. AR 26.

In the Mental Impairment Questionnaire, Dr. Weis opined that Plaintiff could not meet competitive standards in the following areas: maintain attention and concentration for extended periods, manage regular attendance and be punctual within customary tolerances, work in coordination with or in proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically symptoms, interact appropriately with the general public, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. AR 357. In addition, Dr. Weis believed Plaintiff would be "seriously limited, but not precluded" in sustaining an ordinary routine without special supervision,

8

performing at a consistent pace without an unreasonable number and length of rest periods, and asking simple questions or requesting assistance *Id.* Dr. Weiss stated Plaintiff would quit his job due to paranoia, would miss two to three days of work per week because of his irregular sleep cycle, and be off task fifty percent of a workday. AR 358.

Again, the ALJ was not persuaded by these opinions because she deemed them "an overestimate of the claimant's limitations in inconsistent with the treatment notes." AR 26. While the ALJ acknowledged instances of "increased symptoms," she labeled them irregular. Overall, according to the ALJ, Dr. Weis's records show that Plaintiff had generally stable symptoms, he rarely used his as-needed medicine, and he continued to engage in various activities of daily living. *Id.* The ALJ states that her RFC is consistent with Dr. Weis's opinion that Plaintiff is without limitations for simple work and accommodates his difficulties interacting with others by including restrictions that allow for (a) only occasional noncollaborative interactions with co-workers and supervisors after a training period (not to exceed 30 days), and (b) no work in proximity to and not directly with the public. AR 26–27.

In the Physical Medical Source Statement, Dr. Weis listed Plaintiff's symptoms of schizophrenia as "[p]aranoia causing interpersonal conflict with family, treatment providers, and workplace settings. Impaired sleep cycle regulation, oversleeps during day, cannot attend appointments in morning. Impaired insight into personal deficits. Blames others. Unrealistic expectations of taking care of himself." AR 359. She identified the following clinical findings and objective signs: "Argumentative and accusatory during our appointments due to paranoia. Accuses family members of trying

9

to poison him. Impaired empathy towards others, demonstrates unreasonable expectations such as demanding money. Cannot regulate sleep to keep to a schedule." *Id.* As to his functional limitations, Dr. Weis opined that Plaintiff could stand for 45 minutes and sit for 30 minutes before needing to get up; could sit and stand/walk for two hours every eight-hour workday; would need to take unscheduled breaks when paranoid; would be off task 25% of the workday; and is incapable of even low stress work. AR 360–61. Dr. Weis attributed these limitations to Plaintiff's psychological issues: "He misinterprets actions of those around him, becomes angry and accusatory, and has historically been unable to maintain employment in a variety of low stress settings. He cannot regulate his sleep schedule and had high absenteeism as a result." AR 361.

The ALJ rejected this opinion. She first noted that Dr. Weis did not treat Plaintiff for physical conditions and therefore could not give limitations associated with any such conditions. AR 27. She also emphasized that the RFC incorporates Plaintiff's limitations in interacting with others: "based on treatment records, the claimant has clearly demonstrated significant stability on the Invega injections with long-term compliance shown, which supports a greater ability to interact with others for at least a possible 30-day training period." *Id.*

In contrast, the ALJ was persuaded by the opinion of state agency psychological consultant Dr. Uwe Jacobs. AR 25. Dr. Jacobs opined that Plaintiff has "up to moderate limitations secondary to schizophrenia, such that he requires simple work involving limited contact with others and infrequent workplace changes." The ALJ found this opinion to be consistent with Dr. Weis's treatment records, which "document compliant

10

treatment and generally stable symptoms with minimal mental status examination findings throughout the longitudinal record." *Id.*

### c. Analysis

Plaintiff argues that the ALJ erred in evaluating the medical opinion evidence. He first claims that the ALJ failed to address Plaintiff's continuing paranoia, as reflected in Dr. Weis's notes. However, the ALJ's characterization of Dr. Weis's treatment notes as generally reflecting normal mental status examinations and indicating that Plaintiff's schizophrenia was mostly controlled by medication is supported by substantial evidence. *See* AR 250–51, 256–58, 262–64, 268–70, 274–76 ("good mood, sleep and no paranoia" but illogical thought process), 280–82 (illogical thought process but otherwise normal), 287–88, 292–94, 298–300, 304–06, 310–12, 317–19, 323–25, 332–34. To be sure, the record does contain some treatment notes that show paranoid and illogical thinking. *See* AR 341–42 (paranoid and illogical thought process), 354 ("Paranoia evident in our interaction today, and in description of relationship with mother"), 368 ("unrealistically upbeat"). But the ALJ discussed these records. As to pre-filing treatment notes, the ALJ recognized that "while there were a couple occasions when the claimant reported some paranoid thoughts and/or increased anxiety, at least one instance associated with increased psychosocial stressors, he nevertheless consistently denied paranoia and/or psychotic symptoms on Invega and he used as-needed oral Invega seldomly." AR 24. In short,

> other than just a couple of occasions with a finding of an illogical thought process, Dr. Weis's treatment notes showed only unremarkable mental status examinations, including normal appearance, behavior, and speech, stable or euthymic mood, appropriate affect, non-psychotic thought content, logical thought process, normal associations, good memory, sufficient

11

> attention, adequate concentration, intact orientation, intact judgment, and adequate to fair insight.

*Id.*

Post-May 2021 treatment notes likewise "show mostly controlled symptoms on Invega, notwithstanding some increased issues and symptoms seemingly attributed to ongoing relationship conflicts with the claimant's mother, as well as still generally unremarkable mental status examinations." *Id.* The ALJ states, "[c]ertainly the undersigned acknowledges instances of increased symptoms, such as when the claimant has reported some psychosocial stressors, but Dr. Weis's treatment records do not describe this as a regular occurrence." AR 26. Thus, she concludes that the RFC "is supported by Dr. Weis's treatment records that demonstrate regular and compliant treatment, show ongoing stability with the claimant consistently denying any schizophrenia-type symptoms, and document mostly unremarkable mental status examinations throughout the longitudinal record." AR 27.

In light of this discussion, the Court cannot agree with Plaintiff that the ALJ failed to address Plaintiff's paranoia and inability to get along with his mother or cherry-picked evidence to support her determination. The ALJ considered this evidence but found that the preponderance of normal findings outweighed the more infrequent abnormal findings. This was her prerogative as factfinder, and the Court cannot reweigh evidence on appeal.

Plaintiff also contends that the ALJ found Dr. Jacobs' opinion persuasive but did not include his limitation for limited contact with others in the RFC. But the RFC does have an interaction limitation: Plaintiff "can have occasional, noncollaborative interactions with co-workers and supervisors after the [30-day] training period," and "can

12

work in close proximity to, but not directly with the general public." AR 23. Plaintiff does not explain how this is distinguishable from or incompatible with Dr. Jacobs' opinion that Plaintiff have limited contact with others. Absent any coherent argument to the contrary, the Court agrees with the Commissioner that this is a distinction without a difference and not grounds for remand.

## II. Plaintiff's Symptoms of Paranoid Schizophrenia

Plaintiff argues that the ALJ failed to consider the impact of his schizophrenia symptoms—as set forth in Plaintiff's testimony and Dr. Weis's treatment notes and opinions—on his ability to engage in substantial gainful activity on a full-time and sustained basis, which requires a remand of this matter. The Court disagrees.

As discussed above, the Court does not find reversible error in the ALJ's handling of Dr. Weis's opinion. Accordingly, the focus turns to her evaluation of Plaintiff's credibility. Under SSR 16-3p, the ALJ is required to

> explain which of an individual's symptoms [the ALJ] found consistent or inconsistent with the evidence in his or her record and how [the ALJ's] evaluation of the individual's symptoms led to [the ALJ's] conclusions. [The ALJ] will evaluate an individual's symptoms considering all the evidence in his or her record.

2017 WL 5180304, at *8 (Oct. 25, 2017). In evaluating a claimant's symptoms, it is not enough for an ALJ "to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered' or that 'the statements about the individual's symptoms are (or are not) supported or consistent.'" *Id.* at *10. Rather, "[t]he determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.*; *see also Kepler v.*

13

*Chater*, 68 F.3d 387, 391 (10th Cir. 1995) ("Findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.").

Under this rubric, 20 C.F.R. § 404.1529(c)(4) provides the ALJ a framework in evaluating a claimant's own statements concerning his symptoms:

> We will consider your statements about the intensity, persistence, and limiting effects of your symptoms, and we will evaluate your statements in relation to the objective medical evidence and other evidence, in reaching a conclusion as to whether you are disabled. We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your medical sources or other persons about how your symptoms affect you.

20 C.F.R. § 404.1529(c)(4) (emphasis added); *see also* SSR 16-3p, 2017 WL 5180304, at *6. If the claimant's statements regarding the intensity, persistence, and limiting effects of his symptoms "are inconsistent with the objective medical evidence and the other evidence," the ALJ must evaluate whether the claimant's "symptoms are less likely to reduce . . . his capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner." *Id.* at *8; *Luthy v. Saul*, No. 17-cv-2206-PAB, 2020 WL 6938300, at *6 (D. Colo. Nov. 25, 2020) (same). So long as the ALJ sets forth the specific evidence he relies upon in evaluating the consistency of the claimant's subjective complaints with other evidence, the ALJ "need not make a 'formalistic factor-by-factor recitation of the evidence.'" *Keyes-Zachary*, 695 F.3d at 1167 (quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)).

Here, the ALJ summarized Plaintiff's testimony about the effects of paranoid schizophrenia on his ability to maintain regular work. AR 23–24. She then explained at

length why Plaintiff's statements about the intensity, persistence, and limiting effects of these symptoms were inconsistent with the longitudinal medical record, which did not "document any significant schizophrenia-type symptoms." AR 24–25. The ALJ further observed that Plaintiff's testimony about the debilitating impact of his mental impairment was inconsistent with his daily activities, which include "artwork, making music, doing promos, and doing vape reviews among other things, as well as activities to include skateboarding and playing basketball, in addition to spending time with friends." AR 26. Keeping in mind the principle that "[c]redibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence," *Kepler*, 68 F.3d at 391 (internal quotation and citation omitted), the Court finds that the ALJ's credibility analysis was appropriate because she clearly articulated how and why she evaluated Plaintiff's symptoms the way she did, affirmatively linking her conclusions to evidence in the record.

## Conclusion

For the reasons set forth above, the Commissioner's decision is **AFFIRMED**. Plaintiff's Complaint (Dkt. #1) is **DISMISSED**.

Dated this 3rd day of May, 2024.

BY THE COURT:

*N. Reid Neureiter*

N. Reid Neureiter
United States Magistrate Judge